Not For Publication

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SALIM A. MUHAMMAD,

      Plaintiff,

v.

DAY & ZIMMERMANN NPS, et al.,

      Defendants.

Civil Action No.: 2:09-cv-01670-PGS-ES

**OPINION**

**SHERIDAN, U.S.D.J.**

Plaintiff Salim A. Muhammad ("Plaintiff") was discharged by Day & Zimmermann NPS, Inc. (D&Z) in April 2007.  Plaintiff, who is African-American, brought suit for discriminatory discharge and retaliation under the Civil Rights Act of 1866, 42 U.S.C. §1981 et seq. (§1981) and the New Jersey Law Against Discrimination (NJLAD). This matter comes before the Court on two motions for summary judgment, one submitted by D&Z and one submitted by the International Brotherhood of Boilermakers, Local Lodge 28 (Local 28). Both motions seek dismissal of the Plaintiff's complaint in its entirety.  For the reasons set forth below, the motions are granted.

## I.     BACKGROUND

Muhammad is a boilermaker who travels throughout the country in pursuit of work. He receives work by contacting the union in a particular territory to request employment.

D&Z provides contract construction and repair services to third-party clients. It does so by utilizing temporary union laborers for its projects. In 2007, D&Z was awarded a contract to perform work at the Hudson Generating Station (hereinafter "Hudson Project"), a power plant operated by Public Service Electric and Gas Company (PSE&G). The work entailed removing metal tubing from inside of old condensers and replacing it with new tubing.

In response to the contract, the D&Z project manager, Ken Letsom, contacted a business manager at Local 28 to secure workers for the Hudson Project. Local 28 then provided workers for the project, including Plaintiff. Plaintiff's employment on the project lasted from March 27, 2007 until the morning of April 10, 2007. Another worker, Joseph Stephenson, who is caucasian, also began work with D&Z at the Hudson Project on March 27, 2007. Both Stephenson and Plaintiff were assigned to work the night shift. On their first day of work, they received orientation on the rules and regulations particular to the project.

In early April 2007, Plaintiff struck his knee while working on the job. He continued to work, but the knee swelled overnight and he was examined by a doctor the next day. Plaintiff then informed his foreman, Steve Pocci, of the injury. Pocci was upset and questioned him about why he did not report the injury earlier. Plaintiff responded by saying, "listen, tone it down sir. I'm a grown man now. We don't want no fisticuffs." Pocci then informed Letsom, and Letsom also admonished Plaintiff for not reporting the injury immediately. Pursuant to D&Z policy, Plaintiff was taken to an approved doctor and was placed on light duty work.

Also in early April 2007, Pocci, who is caucasian, allegedly harassed Plaintiff by (1) disrespectfully pointing his finger in Plaintiff's face two or three times, (2) by poking Plaintiff in the back and telling him to get off the phone in the work zone, (3) by complaining about Plaintiff leaving the break trailer later than the other workers, (4) and by remarking that Plaintiff worked too slowly

on some tasks.  After Pocci poked Plaintiff in the back, Plaintiff met with D&Z management and the Local 28 steward, Paul Tsakonas, to complain about Pocci's alleged harassment.  Pocci was the only employee that Plaintiff complained about at the Hudson Project.

On April 10, 2007, a "safety stand down" required the crews to stop working and remove debris from the work area.  In preparation for removing the debris, a head count was performed and Stephenson and Plaintiff were found to be missing.  D&Z management began searching for them.  Plaintiff and Stephenson were found outside the PSE&G restroom an hour later.  The PSE&G restroom was located outside of the work area and was allegedly off-limits for D&Z employees.  After an angry exchange of words between Plaintiff and the general foreman, Joe Coe, both Plaintiff and Stephenson were terminated.  Thereafter, project manager Letsom wrote in the log book that they had been terminated for being out of the work area for a time greater than forty-five minutes.

Plaintiff maintains that he and Stephenson were not "missing" for forty-five minutes; they were only standing where a supervisor had directed them to wait for work that needed to be performed.  He also alleges that they went to use the restroom only after they were unable to find a supervisor to ask permission.  Finally, Plaintiff maintains that he was never expressly told that he could not use the PSE&G bathroom.  Stephenson maintains that they were terminated over a "miscommunication."

After the termination, Plaintiff left the site and Stephenson went into a work trailer.  Stephenson allegedly then heard a "superintendent" who is unknown to him say: "The n***er has got to go.  He has been nothing but trouble."  Stephenson identified the speaker as over fifty-eight years old, with grey hair.  No D&Z employee fits that exact description.  Plaintiff maintains that the speaker was Dan Woods, who was employed by D&Z as personnel coordinator on the project.  Plaintiff also maintains that Woods was the ultimate decision-maker in D&Z's decision to terminate

him.  Stephenson also reports that another unidentified individual mentioned briefly that D&Z would like to rehire Stephenson in a few days because he was a good employee.  Stephenson alleges that the unidentified "superintendent" dismissed that idea in favor of permanent termination.  Stephenson recounted these comments to Plaintiff several days later.

Following his termination, Plaintiff filed a grievance with Local 28 contesting his termination as unjust.  After an investigation, Local 28 determined that the terminations of Plaintiff and Stephenson were appropriate.  On April 9, 2009, Plaintiff brought claims against Defendants for discriminatory discharge and retaliation under the NJLAD and §1981.  Defendants now come before the Court seeking dismissal by way of summary judgment.

## II.    SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleading, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 (1986);  Fed. R. Civ. P. 56(c).  An issue is genuine if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Panda Allia v. Target Corp.,* 2010 US. Dist. LEXIS 25337, at *3, (D.N.J. 2010).  A fact is material if, "under the governing substantive law, a dispute about the fact might affect the outcome of the suit." *Id.*  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Industrial Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004).

On a summary judgment motion, the moving party must first show that no genuine issue of material facts exists. *Celotex,* 477 U.S. at 323.  The nonmoving party must then rebut the motion

4

with "facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berkeley Inv. Group, Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006). Unsupported allegations are insufficient to defeat summary judgment. *Schoch v. First Fidelity Bancorp.,* 912 F.2d 654, 657 (3d Cir. 1990). Thus, Plaintiff must set forth facts sufficient to establish each essential element of his case, or else his claims must be dismissed. *Id.*

## III.    DISCUSSION

Plaintiff claims that he was discriminated and retaliated against due to his race. He alleges claims against both Defendants under the NJLAD and §1981. The NJLAD prohibits racial discrimination in the work place and §1981 prohibits racial discrimination in making and enforcing contracts. *Victor v. State of N.J.,* 203 N.J. 383 (2010)(NJLAD); *CBOCS West, Inc. v. Humphries,* 553 U.S. 442 (2008)(§1981). This Court will address in turn each Defendant's motion for summary judgment.

### A.  Day & Zimmermann's Motion for Summary Judgment

#### 1. The *McDonnell Douglas* Burden Shifting Analysis

Discriminatory treatment claims brought under the NJLAD and §1981 are both analyzed under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Monacao v. Am. Gen. Assur. Co.,* 359 F.3d 296, 300-05 (3d Cir. 2004) (discussing the NJLAD); *Estate of Oliva v. N.J., Dep't of Law & Pub. Safety,* 604 F.3d 788, 798 (3d Cir. 2010) (discussing §1981).

The *McDonnell Douglas* analysis consists of three steps. First, the plaintiff must establish a prima facie case of discrimination. *Monaco*, 385 F.3d at 300. To meet the burden at this step of the analysis, the plaintiff-employee must produce evidence sufficient to "convince a reasonable fact finder to find all of the elements of a prima facie case." *Keller v. Orix Credit Alliance, Inc.*, 130

5

F.3d 1101, 1108 (D.N.J. 1997)(citation omitted). However, the "burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Once a prima facie case has been established, the second step of the *McDonnell Douglas* analysis shifts the burden of production, but not the burden of persuasion, to the defendant-employer to articulate a legitimate, non-discriminatory reason for terminating the employee. *Stouch v. Twp of Irvington*, 354 Fed. App'x 660, 666 (3d Cir. 2009). "The employer satisfies this burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perski*, 32 F.3d 759, 763 (3d Cir. 1994). However, the employer need not prove that the tendered reason *actually* motivated its behavior. *Id.*

The third and final step of the *McDonnell Douglas* analysis shifts the burden of production back to the plaintiff-employee to establish that the employer's proffered reason is a pretext for discrimination. "A plaintiff will survive summary judgment if she can produce evidence sufficient 'to meaningfully throw into question' the employer's reason for the allegedly discriminatory action." *Reich*, 2009 U.S. Dist. LEXIS 90540, at *29 (quoting *Fuentes*, 32 F.3d at 765).

**2. Plaintiff's Discriminatory Discharge Claims Under the NJLAD and §1981**

Assuming *arguendo* that Plaintiff has established a prima facie case of discrimination under these claims, summary judgment is nonetheless appropriate because Plaintiff cannot meet his burden on the third step of the *McDonnell Douglas* test – establishing that D&Z's reason for terminating him was pretextual.

To avoid summary judgment at the pretext stage, "the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a fact finder to reasonably infer that each of the

employer's proffered nondiscriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employer action." *Id.*  Stated differently, the plaintiff may demonstrate pretext by directing the Court to evidence from which a reasonable factfinder could either (1) "disbelieve the employer's articulated legitimate reasons" or (2) "believe that an invidious discriminatory reason was more likely than not a motivating or determinate cause of the employer's action." *Fuentes,* 32 F.3d at 763.  The non-moving plaintiff may do so by indicating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Keller,* 130 F.3d at 1108-09.  At survive summary judgment, the plaintiff "need only raise doubt as to the legitimacy of the defendant's proffered reason for its adverse action; it need not prove its discrimination case." *Andes v. N.J. City Univ.*, No. 10-2097, 2011 WL 1053619 (3d Cir. Mar. 24, 2011).

First, Plaintiff attempts to show pretext by pointing to alleged inconsistencies in whether D&Z told Plaintiff that use of the PSE&G bathroom was prohibited.  Second, Plaintiff asserts that his termination was racially motivated as evidenced by the offensive remark that Stephenson overheard in the trailer (i.e. "The n***er has got to go.  He has been nothing but trouble.").

Plaintiff's attempt to show inconsistencies fails because it does not call into question the explanation that Plaintiff and Stephenson were terminated for being found outside the work zone. Plaintiff concedes he was terminated minutes after being found outside the designated work area, i.e., "at the stairs over the unit #1 wash room."  He also does not contest that "the reason advanced at the time of the termination was simply being out of the work area."  Thus, Plaintiff was standing in a location unknown to D&Z management, then went to use the PSE&G bathroom, was found outside of the bathroom, and was terminated for being beyond the work zone. Plaintiff's argument

7

that he was never told he could not use the bathroom only reinforces that he was fired because of that incident; it does not create an inference that D&Z fired him for any other reason. The argument fails to show pretext because it does not demonstrate that there was a "real" reason that he was terminated, which is not the reason D&Z has articulated. *Andes v. New Jersey City Univ.*, 10-2097, 2011 WL 1053619 (3d Cir. Mar. 24, 2011).

Stephenson, too, acknowledges that they were terminated for being outside of the work zone, but contests only that it was "because of a lack of communication" concerning where they were supposed to be stationed. Significantly however, it is not enough to show that the employer made a "wrong or mistaken" decision. *Venter v. Potter*, 2011 U.S. App. LEXIS 10948, 10-11 (3d Cir. Pa. May 27, 2011)(citing *Fuentes*, 32 F.3d at 765). A legitimate miscommunication only supports the inference that D&Z terminated the Plaintiff for what they genuinely believed to be an infraction of their company policy. Furthermore, there is no evidence that D&Z was inconsistent in maintaining why Plaintiff was terminated. Thus, Plaintiff fails to show inconsistencies or contradictions in D&Z's explanation that he was terminated for the actual and legitimate reason of being outside the work zone.

Second, in considering whether an "invidious discriminatory reason" was a motivating factor in Plaintiff's termination, the statement Stephenson overheard is insufficient to demonstrate pretext because the speaker is unknown. In evaluating pretext in discrimination cases, stray remarks have little probative weight unless the Plaintiff can show that they were made by a known decision maker and that they are sufficiently connected to the challenged employment action. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989)(considering stray remarks as insufficient evidence of discriminatory motive*); See also Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. Pa. 1992) (finding stray remarks by non-decision makers only minimally probative, particularly

8

where such statements are made in a context removed from the actual decision-making process).

Here, the individual who uttered the statement is not known. Stephenson stated "I didn't know none of these people" and "I don't really know that this man was the superintendent…I just assumed this." The statement is therefore not attributable to a known decision maker, as Stephenson admits that he did not know the individual and his description of the speaker does not match any D&Z employee. More problematic is that Stephenson described a number of individuals who he did not know as "that supervisor" or "that superintendent," illustrating that he used the term as a common title for people he did not know. Plaintiff asserts that Stephenson really meant Dan Woods, but Stephenson did not make such an assertion and there is nothing in the record to show that this is anything more than an unsupported allegation.

In addition, although all inferences must be drawn in favor of the Plaintiff, the record does not support the inference that it was a D&Z employee who made the statement. Stephenson was confident that the speaker acted like a supervisor but he could not say who the man worked for. In his complaint, Plaintiff alleged that an agent "of one or both Defendants" made the comment, which reinforces that the speaker's employer is unknown. Further, Plaintiff does not even assert that only D&Z employees were present in the trailer when the statement was made. Any number of individuals, from Local 28 management to PSE&G employees, may have been in the trailer and may have been "the superintendent" who uttered the alleged comment. Plaintiff has offered no evidence bearing on whether the speaker had any connection with D&Z or D&Z's decision to terminate him. The statement, therefore, is only a "stray remark" as the record does not support an inference that the comment came from a "known decision maker" or was "sufficiently connected" to Plaintiff's termination. *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 521 (3d Cir. 1997)("comments by those individuals outside of the decisionmaking chain are stray remarks, which, standing alone, are

9

inadequate to support an inference of discrimination"). The remark is also of little probative value because it was uttered after Plaintiff was terminated and it does not speak directly to why he was terminated. Thus, it is insufficient to survive summary judgment. *See Burrows v. Twp. of Logan*, 415 Fed.Appx. 379, 383-84 (3d Cir. 2011)(finding stray remarks by individuals outside of the decisionmaking chain insufficient to defeat summary judgment); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.")(citations omitted).

The other comment Stephenson overheard (i.e. "You're a good hand. We want to keep you. And if we can, we want to lay you off for three days and then we'll call you back to work.") suffers the same infirmities. Plaintiff does not allege that this statement came from a D&Z employee and does not even hazard a guess as to who the speaker might have been. Equally significant, the language itself – remarking Stephenson is a good employee and should be rehired – does not concern the reason for Plaintiff's termination. In sum, both of the statements Stephenson overheard are only stray remarks which are insufficient for a fact-finder to reasonably disbelieve D&Z's articulated reason for terminating Plaintiff.[1]  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252(1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

Finally, Plaintiff fails to show that he was terminated under circumstances from which a jury

---

[1]  The overheard remarks are also hearsay as they are out-of-court statements offered for their truth. The statements do not meet the hearsay exception for admissions by a party-opponent as Plaintiff cannot show that speaker was an agent of D&Z or was speaking within the scope of employment. *See* Rule 801(d)(2)(D).  Plaintiff failed to address this issue in his brief. Thus, the Court would be right to ignore the statements, as hearsay is inadmissible at summary judgment. *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir.2009). However, because the Court is ruling against the Plaintiff, the statements are considered despite their inadmissibility.

could infer pretext because he was terminated for the same infraction and at the same time as a caucasian employee.  Although this court is not entitled to weigh evidence, the Court must consider "the entire situation as a whole on summary judgment, because the jury would be entitled to view the evidence as a whole."  *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 285 (3d Cir. 2001).  When the record is taken as a whole, a reasonable jury could not conclude that discriminatory animus was a determinative or motivating factor in D&Z's decision to terminate the Plaintiff because he was terminated alongside a caucasian co-worker for the same violation of company policy.

Plaintiff has failed to "meaningfully throw into question the employer's reason for the allegedly discriminatory action."  *Reich*, 2009 U.S. Dist. LEXIS 90540, at *29.  Accordingly, Defendant's motion for summary judgment as to Plaintiff's discriminatory discharge claim is granted.

### 3.  Plaintiff's Retaliation Claims Under the NJLAD and §1981

Plaintiff claims that he was retaliated against for making complaints to D&Z management about his supervisor Pocci. The burden-shifting requirements of *McDonnell Douglas* similarly apply to retaliation claims.  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir.1997).

To establish a prima facie case of retaliation under the NJLAD, the Plaintiff must demonstrate that: "(1) plaintiff was in a protected class; (2) plaintiff engaged in protected activity known to the employer; (3) plaintiff was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence."  *Victor v. State of N.J.*, 203 N.J. 383, 409  (2010).

The Supreme Court has determined that § 1981 also encompasses retaliation claims. *CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951, 1954-55 (2008). To establish a prima facie case of retaliation under §1981, the employee must show that (1) he engaged in protected activity, (2) his

11

employer took an adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *Estate of Oliva v. N.J., Dep't of Law & Pub. Safety, Div. of State Police*, 604 F.3d 788, 798 (3d Cir. 2010).

D&Z contends that Plaintiff cannot support a prima facie case of retaliation under the NJLAD or §1981 because he never engaged in protected activity that was known to a decision-maker – here, Letsom and Woods.  Specifically, D&Z maintains that Plaintiff is not protected because he made no complaint to management that was related to racial discrimination.  Plaintiff responds by claiming that he made reports of discriminatory treatment about Pocci and that he was terminated because of those complaints. However, just as with the claim for discrimination, Plaintiff fails to meet the pretext requirement under the *McDonnell-Douglas* test. Plaintiff cannot show the he was terminated under pretextual circumstances; thus, summary judgment is granted for D&Z on the retaliation claim.

Setting the issue of pretext aside, the Court is also not satisfied that Plaintiff could demonstrate a prima facie case of retaliation because the record does not reflect that he ever engaged in protected activity, as required under the NJLAD and §1981.  Under the NJLAD, a protected activity is one where "that person has opposed any practices or acts forbidden by this act," not where a person has opposed general harassment. N.J.S.A. 10:5-12(d);  *Rene v. Lidestri Foods, Inc*. Slip Copy, 2010 WL 4807050 (D.N.J., 2010).  Complaints about "unfair treatment in general" are not protected activity.  *Barber v. CSX Distribution Services*, 68 F.3d 694, 701-02 (3d Cir. 1995).

Although Plaintiff cites in his brief that he "did claim he was discriminated against at a meeting," specifically as a result of being poked by Pocci, there is no evidence Plaintiff complained that Pocci's actions were motivated by race.  The record does not reflect that the Plaintiff's complaints concerned anything more than a racially-neutral dispute of a personal nature between he and Pocci.  Indeed, Plaintiff testified that Pocci treated the other African-American employees better

12

than he, and that Pocci only poked him for being on the phone, not anyone else.  The record reflects only a personal dispute, with Plaintiff's complaints to management insufficient to meet the standards for protected activity.  *See Mitchell v. Western Union*, 2007 U.S. Dist. LEXIS 92621 (D.N.J. Dec. 11, 2007)(the retaliation provision does not protect against action premised on "personal reasons").  Without evidence demonstrating that Plaintiff complained of racially discriminatory practices, there can be no claim of retaliation.  D&Z's summary judgment motion as to Plaintiff's retaliation claim is granted.

### B.  Local 28's Motion for Summary Judgment

Where a plaintiff contends that a labor organization is liable for discrimination engaged in by an employer, the Third Circuit precludes a finding of union liability in the absence of evidence that the union "instigated or actively supported" the underlying acts of discrimination.  *Hubbell v. World Kitchen*, *LLC*, 717 F. Supp. 2d 494, 499 (W.D. Pa. 2010)(citing *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 95 (3d Cir. 1999));  *Skoorka v. Kean Univ.*, 2007 U.S. Dist. LEXIS 74214 (D.N.J. Oct. 4, 2007).

Plaintiff alleges that because Steve Pocci and Joe Coe were Local 28 members and "orchestrated" Plaintiff's discriminatory termination, Local 28 should be held liable.  Plaintiff also briefly asserts that the union steward, Tsakonas, failed to take proper action when Plaintiff filed complaints with Local 28.  Local 28 maintains that they act only as a referral source for its members, and they have no responsibility for any alleged racial discrimination occurring on the job site, even if some of the D&Z employees were also members of Local 28.  Local 28 also denies any unfair representation and asserts that in any event, such a claim is not before this Court.

Because summary judgment was granted for D&Z on all claims, Plaintiff's claim based on the actions of Pocci and Coe similarly fail as there is no genuine issue of material fact that Plaintiff's

race influenced their actions.  Even assuming *arguendo* that this Court had found otherwise, summary judgment would still be appropriate on this issue as Plaintiff fails to address Local 28's assertion that they cannot be held liable for the actions of those individuals acting in their capacity as D&Z employees.[2]  Indeed, there is no vicarious liability of a union and the record contains no evidence that Local 28 itself instigated or actively supported the discriminatory acts allegedly experienced by the appellants.  *Anjelino,* 200 F.3d at 95-96; *Hubbell,* 717 F.Supp.2d at 499; *E.E.O.C. v. Pipefitters Ass'n Local Union 597,* 334 F.3d 656, 658 (7th Cir. 2003).

The only other avenue on which Plaintiff could prevail is a showing that the grievance process was abandoned for discriminatory reasons. *Hubbell*, 717 F.Supp.2d at 499.  Plaintiff does briefly assert that Tsakonas, who was acting solely as an employee of Local 28, failed to take action after Plaintiff made complaints of unfair treatment.  Specifically, Plaintiff argues that Tsakonas failed to represent Plaintiff's interests by neglecting to inform project manager Letsom of Plaintiff's complaints, as required under the Local 28's National Maintenance Agreement.  However, Plaintiff does not point the Court to anywhere in the record that evidences that Plaintiff ever made a complaint to Tsakonas concerning racial discrimination.  In addition, the record contains no details of any meeting between Tsakonas and the Plaintiff.  Further, Plaintiff has not asserted that the alleged failure to pursue the grievance process was motivated by "discriminatory reasons," as is required under the NJLAD and §1981.  *Anjelino*, 200 F.3d at 95.  The record simply does not reflect any interactions whatsoever with Tsakonas or Local 28 that would give rise to a claim under the NJLAD or §1981.

In sum, the record does not reflect any discriminatory or retaliatory actions by Local 28.

---

[2]  Strikingly, Plaintiff cites no legal authority in his brief in opposition to Local 28's motion for summary judgment.

Because Plaintiff fails to establish a genuine issue of material fact of discriminatory or retaliatory treatment under the NJLAD or §1981, summary judgment is granted in favor of Local 28.

**IV.     CONCLUSION**

For the reasons set forth above, Defendants' motions for summary judgment are granted. This matter is dismissed with prejudice.

*s/Peter G. Sheridan*      
PETER G. SHERIDAN, U.S.D.J.

July 22, 2011